IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GEORGE VEAZEY and** | § | |
| **STEPHANNIE MOWER,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:04-CV-182-L** |
| | § | |
| **ALLSTATE TEXAS LLOYDS,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are two cross motions for summary judgment: Defendant's Motion for Summary Judgment, filed December 19, 2005, and Plaintiffs' Motion for Summary Judgment, filed March 10, 2006. After careful consideration of the motions, briefs in support, responses, replies, summary judgment evidence, record and applicable law, the court **grants** Defendant's Motion for Summary Judgment and **denies** Plaintiffs' Motion for Summary Judgment.

## I. BACKGROUND

This is a declaratory judgment action filed by insureds George Veazey and Stephannie Mower ("Plaintiffs" or "insureds") against their insurance company, Defendant Allstate Texas Lloyds ("Allstate"). Plaintiffs seek a declaration that Allstate had no right, as Plaintiffs' subrogee, to enter into a settlement agreement with a third-party tortfeasor before Plaintiffs could recover for all of their losses following a house fire. Plaintiffs' Original Petition for Declaratory Judgment & Request for Disclosure ("Complaint") at 6.[1] Plaintiffs contend that, because they were not "made

---

[1] Plaintiffs originally brought suit against Allstate in the 298th Judicial District Court of Dallas County on December 22, 2003. Allstate removed the state court action to this court on diversity grounds on January 29, 2004.

**Memorandum Opinion and Order – Page 1**

whole" under Texas law in their settlement with the tortfeasor, Allstate is not entitled to subrogation, and must turn over all money it received from the tortfeasor in its own settlement as a subrogee.  *Id.* The parties agree that no genuine issue of a material fact exists in this dispute, only the application of law to these facts.  *See* Brief in Support of Defendant's Motion ("Def. Br.") at 5-7; *see also* Plaintiffs' Brief in Support of Motion for Summary Judgment ("Pls. Br.") at  2-4, 6 ("Plaintiffs do not now, nor have they ever, denied that Allstate had a contractual right of subrogation.  The issue is not '*whether.*'"  The issue is '*when.*'").  Thus, the court will summarize the material facts as they appear in both parties' filings and provide citations only when referencing specific information as it appears in a particular filing.

On July 21, 2001, a suspected defect in Plaintiffs' Lexus automobile caused it to catch fire in the middle of the night.  The fire spread to Plaintiffs' house and damaged much of the house and their personal property, which were insured by Allstate.  Allstate paid Plaintiffs the limits of the policy for the damages to the house and their personal property, and for living expenses, a total of $1,375,523.  Plaintiffs, however, claimed damages totaling $9,090,382.79, and filed a product liability lawsuit against manufacturer Toyota Motor Sales, U.S.A., and other entities (collectively, "Toyota") on January 18, 2002, in the United States District Court for the Eastern District of Texas, Marshall Division.  Upon Toyota's motion, the case was transferred to the Northern District of Texas, Dallas Division, whereupon Allstate intervened as Plaintiffs' subrogee.[2]  On December 30, 2002, Allstate settled its subrogation claim with Toyota in a Confidential Settlement Agreement,

---

[2]Upon transfer, the civil action was assigned cause number 3:02-CV-1297-K.  Separately, Allstate had filed its own product liability action as Plaintiffs' subrogee against the same Toyota Defendants in state court in the 191st Judicial District Court in Dallas County, but voluntarily dismissed the state court suit when it decided to intervene in the federal court action initiated by Plaintiffs.  *See* Def. Br. at 6.

**Memorandum Opinion and Order – Page 2**

Release and Assignment of Claims for $900,000.[3]  *See* Appendix to Plaintiffs' Motion for Summary

Judgment, Exhibit 5 ("Pls. App." Ex. 5) at 7.  The agreement specifically states that  Allstate had

a "valid and assignable right to subrogation," to the extent of its $1,375,523 in payments to

Plaintiffs, but accepted the $900,000 payment from Toyota in "full and final satisfaction of all

claims for damages and litigation expenses." *Id.* at 5, 8.  Allstate also assigned its subrogation rights

to the extent of its payments of $1,375,523 to Toyota.  *Id.* at 17.   In response, Plaintiffs filed a

Motion for Partial Summary Judgment on Validity of Assignment and Applicable Settlement Credit,

whereby Plaintiffs asserted that Toyota was not entitled to an assignment or settlement credit for the

full amount of Allstate's subrogation claim, since Toyota only paid Allstate $900,000.  Appendix

to Defendant Allstate Texas Lloyds' Motion for Summary Judgment, Exhibit 12 ("Def. App." Ex.

12) at 1-2.  On July 31, 2003, before the court ruled on Plaintiffs' motion, Plaintiffs entered into

their own Settlement Agreement and Release with Toyota.  *See* Pl. App. Ex. 6.  Plaintiffs' settlement

acknowledges the $900,000 that Allstate had already accepted from Toyota, and states that:

> [d]espite the fact that the Plaintiffs contend that they were not fully compensated for
> damages Plaintiffs contend was a single, indivisible injury or that Plaintiffs contend
> they were not made whole for their damages in this settlement, claims with which
> [Toyota] disagrees, Plaintiffs will execute a release of Defendant and the other
> released parties for all claims, causes of action or damages made the basis of the
> incident in question, including claims related to Defendant's previous settlement
> with Allstate, in exchange for a payment of $_____ . . . .

*Id.* at 2-3.  The agreement also states that "nothing in this Agreement shall prohibit Plaintiffs from

filing a subsequent cause of action against Allstate as those rights, claims and causes of action are

---

[3]The parties have requested that settlement documents be placed under seal; however, the $900,000 and the $1,375,523 figures are already in the public domain in unsealed court records.  Accordingly, the court sees no reason to seal this information.  The court, however, places under seal the amount for which Plaintiffs and Toyota settled, and such information is not included in this opinion.  Moreover, the court has found it necessary to quote from limited portions of the settlement agreement to write this opinion, and, by doing so, hereby **modifies** any previous order placing certain documents under seal.

specifically reserved." *Id.* at 4.  On August 11, 2003, upon a joint motion by Plaintiffs and Toyota, the court entered an order of dismissal with prejudice on all of Plaintiffs' claims.  Allstate states that the court entered an order to nonsuit with prejudice its claim as an intervening plaintiff on September 30, 2003.[4]  As previously stated, Plaintiffs filed the current lawsuit against Allstate in state court on December 22, 2003, and Allstate removed the action to this court on January 29, 2004.

In Defendant's Motion for Summary Judgment, Allstate argues that it is entitled to summary judgment on three grounds:  (1) Plaintiffs have misinterpreted the made-whole doctrine and cannot apply it in this case; (2) even if the made-whole doctrine applies, Plaintiffs could have and should have asserted their rights in the prior litigation and are barred by *res judicata* from now bringing this claim; (3) even if Plaintiffs are not barred by *res judicata*, their failure to challenge Allstate's assertion of its subrogation interest until the filing of this lawsuit constitutes a waiver of their right to such a challenge. Def. Br. at 8-15.  Plaintiffs' Motion for Summary Judgment essentially takes the opposing view on all three of Allstate's arguments.  First, Plaintiffs contend that because they have not fully recovered all of their damages from the fire, the made-whole doctrine prevents Allstate from exercising its subrogation rights.  Pls. Br. at 6-7.  Second, Plaintiffs argue that they are not barred by *res judicata*, since they had no standing to sue Allstate until their settlement with Toyota failed to make them whole.  *Id.* at 8-9.  Finally, Plaintiffs assert that they had no legal duty to object at the time of Allstate's settlement with Toyota, and did not waive their right to now file

---

[4]Allstate cites to the court order dated September 30, 2003, as the order that dismissed all remaining parties and closed the case.  Def. Br. at 7.  This court's independent review of the prior court's records reveals, however, that the September 30, 2003, Order to Nonsuit Cause with Prejudice granted an unnamed "Plaintiff-Intervenor's motion to nonsuit this case with prejudice," likely in response to a motion filed five days earlier by State Farm Mutual Auto, a separate subrogee of the Plaintiffs.  The court could not find any motion to dismiss or nonsuit filed by Allstate in the prior litigation.

this claim.  *Id.* at 9.  For the reasons stated below, the court disagrees with Plaintiffs, and determines that it is appropriate to grant summary judgment in favor of Allstate.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forth with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences and unsupported speculation are not competent

summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513

U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence

in the record and to articulate to the precise manner in which that evidence supports his claim.

*Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in

search of evidence" to support the nomovant's opposition to the motion for summary judgment.  *Id.*;

*see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S.

832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing

laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed

issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a

summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of

proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

### B.  Made-Whole Doctrine

With respect to the made-whole doctrine, as a general rule, under Texas law, "[a]n insurer

is not entitled to subrogation if the insured's loss is in excess of the amounts recovered from the

insurer and the third party causing the loss."  *Ortiz v. Great Southern Fire and Cas. Ins. Co.*, 597

S.W.2d 342, 343 (Tex. 1980) (internal citation omitted).  Even when the insurer has a contractual

right to subrogation out of the first monies received by the insured, such reimbursement rights are

still subject to the equitable principles of the made-whole doctrine.  *Fortis Benefits v. Cantu*, 170

S.W.3d 755, 758 (Tex. App.–Waco 2005, pet. granted Aug. 25, 2006).  The idea behind the made-

whole doctrine is that "when either the insurer or the insured must to some extent go unpaid, the loss

should be borne by the insurer for that is a risk the insured has paid it to assume."  *Ortiz*, 597 S.W.2d

at 344.  For the reasons set forth herein, the general rule regarding the made-whole doctrine does not apply to the circumstances of this case.

### C.  *Res Judicata*

The doctrine of *res judicata* prevents the relitigation of claims that have already been finally adjudicated or that should have been litigated in a prior lawsuit.  This doctrine applies when: (1) there was a prior final judgment on the merits by a court of competent jurisdiction; (2) the prior judgment was between identical parties or those in privity with them; and (3) there is a second action based on the same claims as were raised or could have been raised in the first action.  *U.S. ex rel Laird v. Lockheed Martin Eng'g and Sci. Servs. Co.*, 336 F.3d 346, 357 (5th Cir. 2003).

### D.  Waiver and Forfeiture

Allstate contends that the Plaintiffs' failure to challenge Allstate's assertion of its subrogation interest until the filing of this lawsuit constitutes a waiver of their right to such a challenge.  Def. Br. at 11-12.  Allstate has not used the term "forfeiture," however, the court addresses this term because the allegations and facts set forth by Allstate appear to more appropriately reflect "forfeiture" rather than "waiver."  Waiver is the "intentional relinquishment or abandonment of a known right," while forfeiture  is the "failure to make timely assertion of a right."  *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal citations omitted); *Douglas v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1420 (5th Cir. 1996).

## III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Made-Whole Doctrine

Plaintiffs assert that, because they have recovered more than $1,375,523 through settlement and insurance payments, but less than the $9,090,382.79 they are seeking, they have not been made whole.[5]  Pls. Mot. Summ. J. at 2.  Therefore, Plaintiffs contend that "Allstate was not entitled to collect on its subrogation claim and must now reimburse Plaintiffs the amount paid by Toyota to Allstate in settlement, payments which Toyota would have otherwise paid to Plaintiffs."  *Id.* at 3.  Plaintiffs make clear that they "do not now, nor have they ever, denied that Allstate had a contractual right of subrogation."  Pl. Br. at 6.  Plaintiffs, however, contend that Allstate had no right to settle with Toyota first.  *Id.*  To support their contention, Plaintiffs cite to language from Texas courts stating that "the insurer's right of subrogation may not be exercised *until* the insured has been made whole."  *Id.* (citing *Ortiz*, 597 S.W.2d at 343; *Esparza v. Scott and White Health Plan*, 909 S.W.2d 548, 552 (Tex. App.–Austin 1995, writ denied)) (emphasis added).  Additionally, Texas courts have stated that "[w]hile an insurance contract providing expressly for subrogation may remove from the realm of equity the question of *whether* the insurer has a right to subrogation, it cannot answer the question of *when* the insurer is actually entitled to subrogation or *how much* it should receive."  *Fortis*, 170 S.W.3d at 758 (emphasis in original).

The court agrees with Allstate that Plaintiffs "are attempting to mis-use [sic] the 'made whole' doctrine, which is an equitable doctrine intended to apply where there are insufficient funds to cover the insured's damages."  Def. Br. at 13-14.  No authority exists to support Plaintiffs' position that until they recover 100 percent of their *claimed* damages, their insurer has no right to

---

[5]The court does not reveal the exact amount Plaintiffs have recovered in settlement with Toyota, because the amount is confidential and under seal.

recover its subrogation claim directly from the third-party tortfeasor. Unlike other injured plaintiffs who rely on the made-whole doctrine as a shield from their insurers' reimbursement claims, Plaintiffs are attempting to use the doctrine as a sword to extract a double recovery for payments covering insured losses. The made-whole doctrine simply does not apply, as a matter of law, in the manner in which Plaintiffs seek to use it in this case.

In the only Texas Supreme Court case squarely addressing this issue, the court specifically stated that there is no requirement that the amount recovered by an insured through insurance and a third-party tortfeasor must exceed his total damages before the insurer is entitled to subrogation. *Ortiz*, 597 S.W.2d at 344. In *Ortiz*, the insureds suffered more than $15,000 in damages to their home after a negligent carpet installation caused a fire. *Id.* at 343. The Ortizes claimed at least $4,000 in real property damages, which were covered by their insurance policy, and more than $11,000 in personal property damages, which were not covered by their policy. *Id.* The insurer, after paying the $4,000 claimed for real property damages, asserted a subrogation interest in that amount from the Ortizes' $10,000 settlement with the tortfeasor. *Id.* Plaintiffs' reliance on language from *Ortiz* that "a right to subrogation does not arise until the insured's loss has been fully paid," *id.* at 344 (quoting *Garrity v. Rural Mut. Ins. Co.*, 253 N.W.2d at 514 (Wis. 1977)), is misplaced. A complete analysis of the *Ortiz* case shows that the Texas Supreme Court did *not* adopt the Wisconsin holding, or hold that the Ortizes' insurer had *no* right to subrogation because they had not been made whole. The court explicitly stated, "[W]e are *not* holding that the amount recovered by an insured from his insurer and a third-party tortfeasor must exceed the damages to both insured and uninsured property before the insurer is entitled to subrogation." *Ortiz,* 597 S.W.2d at 344 (emphasis added). Instead, the court held that

**Memorandum Opinion and Order – Page 9**

> [i]f any portion of the $10,000 settlement was intended as compensation for damages
> to the insured real property, Great Southern, after a deduction of its share of the cost
> of collection, would be entitled to subrogation to the extent that the sum of insurance
> collected plus the amount allocated in the settlement agreement to real property
> damage exceeded the Ortizes' loss to their home.

*Id.*    Thus, the court clearly holds that an insurer *may* be entitled to subrogation, even though the insured has not been "made whole." This holding comports with the equitable right of subrogation, since, as the court noted, the idea "is to prevent the insured from receiving a double recovery." *Id.* at 343. In essence, the Texas Supreme Court held that recovery in tort for *uninsured* losses belongs exclusively to the injured plaintiff, and that an insurer would only be entitled to subrogation for tort payments intended to cover the *insured* losses for which the plaintiff has already been compensated. In the Ortizes' case, the $10,000 settlement could have been intended to cover only their uninsured personal property damage, but the court noted that "it is unlikely that Great Southern would release its claim against the third-party tortfeasor without some compensation." *Id.* at 344. Ultimately, the court held that the insurance company had the burden of showing "what amount, if any, of the settlement agreement was allocated to the insured property loss," since it was seeking the right of reimbursement from its insured. *Id.*

In the present case, Plaintiffs are the ones seeking reimbursement from their insurance company for the amount that Allstate recovered from Toyota in its subrogation settlement. Pls. Mot. Summ. J. at 3. Accordingly, Plaintiffs bear the burden of showing what amount, if any, of Allstate's settlement agreement with Toyota was allocated to *uninsured* property loss, which Plaintiffs have the exclusive right to recover under the made-whole doctrine. Plaintiffs have provided no evidence on this issue.[6] Plaintiffs cannot provide any evidence suggesting that Toyota

---

[6]The Settlement Agreement and Release that Plaintiffs negotiated with Toyota states that the settlement payment "is not intended as compensation for punitive damages, loss of wages or loss of wage

paid Allstate for *uninsured* losses, since the basis of Allstate's subrogation claim against Toyota was for the *insured* losses that Allstate had already paid to Plaintiffs. Plaintiffs' claim is simply untenable, because Plaintiffs are, in essence, seeking to recover from their insurance company payments exceeding the limits of their policy. Plaintiffs cite no authority for the proposition that insureds who are not made whole may seek additional compensation from their insurer for damages above and beyond the policy limits. Plaintiffs have also cited no authority supporting their proposition that a duly subrogated insurer may not seek payment directly from the third-party tortfeasor until *after* the insureds have recovered 100 percent of their insured and uninsured damages. In fact, Texas appeals courts have held under similar circumstances that an insurer "had the right to settle its subrogation claim with [the third-party tortfeasor] before trial," and before the insured plaintiff has settled her claim with the tortfeasor. *See Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 495 (Tex. App.–Austin 1994, no writ); *see also Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162 (Tex. App.–San Antonio 1993, no writ) (holding that defendants were entitled to offset the full amount of the insurer's subrogation claim, which had been settled independently by the insurer prior to trial). Additionally, the *Brandon* court concluded that the tortfeasor could offset its liability to the insured plaintiff by the full amount of the insurer's subrogation interest ($52,000), rather than the lesser amount the tortfeasor paid to the insurer to settle the subrogation claim ($30,000). *Id.* The court rejected Brandon's argument that granting the full amount as an offset would amount to a $22,000 "windfall" for the tortfeasor, because the tortfeasor "was taking a risk that it would lose that entire amount if Brandon did not prevail at trial." *Id.* Additionally, the court noted that since Brandon was obliged by statute to fully reimburse its insurer under the Texas

---

earning capacity." Pls. App. Ex. 6 at 11. The amount for which Plaintiffs settled with Toyota is not allocated toward any specific categories of damages.

**Memorandum Opinion and Order – Page 11**

Workers' Compensation Act, she was not entitled to the $22,000 difference, as she claimed, because "the Act was not intended to allow employees to receive a double recovery when pursuing both its workers' compensation claim and a claim against the third party tortfeasor." *Id.*

In this case, Plaintiffs have no entitlement to any payments Toyota has made for *insured* damages already covered by Allstate, as that would amount to a double-recovery for those damages. Plaintiffs are entitled only to payments for *uninsured* damages not previously compensated for by Allstate. The more than $9 million in damages that Plaintiffs claim exceed the amount that they have recovered through insurance and settlement. This circumstance, however, results from Plaintiffs' own choices and decisions about the amount of insurance they would carry on their property and the amount they would accept from Toyota in settlement for their claims. As Texas courts have explained, the made-whole doctrine grows from equitable principles, such as the belief that "when either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Ortiz*, 597 S.W.2d at 344. Equity, however, "is inextricably tied to facts," and conflicts of interests in subrogation "cannot be resolved by a bright-line test that curtails a trial court's discretion to apply equity based on the facts of the case." *Esparza*, 909 S.W.2d at 553. If the made-whole doctrine is intended to equitably allocate the risk of loss, Plaintiffs in this case chose to bear a tremendous risk of loss by carrying only $1.3 million worth of insurance on a property that would cost more than $9 million to restore if destroyed. Allstate has paid Plaintiffs the limits of their policy and has not sought reimbursement from them in subrogation. Furthermore, Plaintiffs' willingness to settle with Toyota for an amount that does not make them whole for their alleged damages indicates that Plaintiffs accepted the payment as an equitable compromise to their claims after a deliberate and thorough evaluation of

all relevant factors, such as the strength of their evidence, the cost of trial, and the likely amount of recovery through a trial on the merits.[7]  Ultimately, Plaintiffs have not shown that Toyota's payment to Allstate was intended to cover *uninsured* losses to which they have the exclusive right to recover; nor have they shown that Allstate, by settling first with Toyota, impaired their ability to recover more from Toyota for their *uninsured* losses.  In short, Plaintiffs failed to raise a genuine issue of a material fact on either of these grounds, and, therefore, Allstate is entitled to judgment as a matter of law.  Stated alternatively, the court agrees with Allstate that it is entitled to summary judgment because the made-whole doctrine does not apply to the facts of this case.  As the made-whole doctrine does not apply to this case, this ground, alone, is sufficient for the court to grant Defendant's Motion for Summary Judgment; however, the court believes that *res judicata* and waiver or forfeiture are alternative grounds to grant summary judgment.

**B.  *Res Judicata***

Allstate asserts that Plaintiffs could have and should have litigated the issue of whether Allstate was entitled to subrogation in the prior federal lawsuit, and are now barred by *res judicata* from bringing this claim.  Def. Br. at 8–11.  Plaintiffs agree with Allstate that the prior action resulted in a final judgment rendered by a court of competent jurisdiction involving the same parties; however, Plaintiffs contend that the third element of *res judicata* is absent, because the two suits involve distinct causes of action.  Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Pls. Resp.") at 7-8.  Specifically, Plaintiffs assert that the prior litigation arose from a product liability claim, whereas the current action is based on Allstate's alleged breach of the made-

---

[7]The court takes judicial notice that Plaintiffs settled with Toyota after the deadline for completion of all discovery, after both parties had filed motions for summary judgment, and two weeks prior to the scheduled trial date.  *See Mower v. Toyota Motor Sales, U.S.A., Inc.*, No. 3:02-CV-1297-K (N.D. Tex., Scheduling Order, April 7, 2003).

**Memorandum Opinion and Order – Page 13**

whole doctrine, although loosely couched as a breach of contract claim. *Id.* Plaintiffs further assert that they had no standing to bring the current claim against Allstate until they learned that they would not be made whole by their settlement with Toyota. *Id.* The court disagrees with Plaintiffs' interpretation of the doctrine of *res judicata* and determines that Plaintiffs could have and should have asserted their claim in the prior litigation.

Regarding *res judicata*, the parties agree that the first two elements are met. To determine whether two lawsuits involve distinct or the same cause of action, the Fifth Circuit applies a transactional test. *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 938 (5th Cir. 2000). The action are the same if they arise out of the same transaction or series of transactions with the same "nucleus of operative facts." *Id.* In other words, a court must ask: "is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment?" *Neilsen v. City of Moss Point, Miss.*, 701 F.2d 556 (5th Cir. 1983). If so, *res judicata* "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *U.S. ex rel Laird*, 336 F.3d at 357. Here, a judgment against Allstate would impair the rights it acquired under the first judgment. While Plaintiffs were suing Toyota on a products liability claim, Allstate sued as an intervenor, and its entitlement to a final judgment in that action depended upon its right to subrogate Plaintiffs' claim. Plaintiffs assert that they do not dispute Allstate's right to subrogation, but to the timing of their settlement with Toyota. Pls. Br. at 6. Since Plaintiffs' position relies on the premise that Allstate has no right to subrogate *until after* they have been "made whole," Plaintiffs could have and should have asserted this claim during the prior litigation when Allstate and Toyota first reached their settlement.

**Memorandum Opinion and Order – Page 14**

Plaintiffs also contend that they lacked standing to pursue such a claim until their own settlement with Toyota failed to make them whole.  Pls. Resp. at 8.  The court disagrees.  If Allstate had no right to subrogate *until* Plaintiffs were made whole, Plaintiffs' cause of action would arise the moment Allstate settled with Toyota, because, under Plaintiffs' theory, they would have already suffered an injury in fact that could have been redressed by a favorable decision.  Further, Plaintiffs also allege that Allstate impaired their ability to recover from Toyota, because they "received less from Toyota as a result of Toyota's previous settlement with Allstate."  Pls. Br. at 4.  If Allstate impaired Plaintiffs' ability to negotiate a favorable settlement by settling first, Plaintiffs could have and should have asserted their claim during the prior federal litigation that Allstate had no right to settle first.  All parties' rights and positions were clear before any entry of a final judgment in the prior litigation, since Allstate settled with Toyota on December 30, 2002, and Plaintiffs settled with Toyota on July 31, 2003, but the court did not enter orders to dismiss and nonsuit until August 11, 2003, and September 30, 2003, respectively.  Thus, at the latest, the claims comprising Plaintiffs' current cause of action should have been raised during the prior litigation when they realized and were made aware on July 31, 2003, that they would allegedly not be made whole, and that Allstate had already received a sum for its subrogation claim.  Their current cause of action necessarily qualifies as a "related matter that, with the use of diligence, should have been litigated in the prior suit."  *See U.S. ex rel Laird*, 336 F.3d at 357.  Accordingly, Allstate is entitled to summary judgment because Plaintiffs' claim is barred by *res judicata*.

## C.  Waiver

Finally, Allstate contends it is entitled to summary judgment because Plaintiffs waived their right to dispute Allstate's subrogation claims by failing to assert it sooner and engaging in conduct

inconsistent with their current claim.  Def. Br. at 11.  Specifically, Allstate asserts that Plaintiffs never raised the made-whole doctrine during the prior federal court litigation, which lasted nine months.  *Id.*  Additionally, when Allstate sued Toyota in state court, Toyota attempted to join Plaintiffs in that state court action.  Plaintiffs objected and specifically asserted that Allstate had a right to independently seek subrogation in that state court lawsuit.  Def. Br. at 11-12; Def. App. Ex. 13.

In light of Plaintiffs' past conduct, they have either waived or forfeited their right to now complain about the timing and propriety of Allstate's settlement with Toyota.  In their effort to strike Toyota's claims against them as third-party defendants in Allstate's state court action, Plaintiffs argued that "[t]he insurer can assert its subrogation claim independently of the insured, even though that claim is considered derivative of the insured's claim."  Def. App. Ex. 13 at 3 (citing *Prudential Prop. and Cas. Co. v. Dow Chevrolet-Olds, Inc.*, 10 S.W.3d 97, 100 (Tex. App.–Texarkana 1999, pet dism'd)).  In the same motion, Plaintiffs further contended that:

> [a]ll of Allstate's relief for the insured portions of the loss can be adjudicated in the above-entitled and numbered cause without the necessity of George Veazey and Stephannie Mower. . . . [A]ll of Allstate's claims can be adjudicated and their ability to protect their interest is not impeded by the absence of George Veazey.

Def. App. Ex. 13 at 5.    As waiver is the intentional relinquishment or abandonment of a known right, Plaintiffs demonstrated their intent to waive the current claim against Allstate by arguing in the state court proceeding that Allstate had the right to pursue its subrogation claim independently of them, and before they had been "made whole" through their own separate litigation against Toyota.[8]  In fact, Plaintiffs argued that Allstate and their own actions against Toyota could each

---

[8]As the court pointed out in footnote 2, *supra*, Allstate had filed its own product liability action as Plaintiffs' subrogee against Toyota in state court, but voluntarily dismissed the state court suit when it decided to intervene in the federal court action initiated by Plaintiffs. *See* Def. Br. at 6.

**Memorandum Opinion and Order – Page 16**

proceed in state court and federal court independently of each other, "and present[ed] no risk to Toyota being subjected to double recovery or impair[ed] any party's right to protect their respective interest." *Id.* at 12.  Such an argument shows Plaintiff's relinquishment of any claim to payments intended as reimbursement for insured losses.  Accordingly, Plaintiffs, through their statements and conduct, have waived the right to now assert a claim for reimbursement from Allstate.

Alternatively, plaintiffs forfeited the right to bring this claim by failing to timely assert it, either as a third party defendant in Allstate's state court action, or during the pendency of the prior federal court action.  Allstate reached its settlement with Toyota on December 30, 2002.  Pls. App. Ex. 5.  Plaintiffs reached their own settlement with Toyota on July 31, 2003.  Pls. App. Ex. 6.  In the time between the two settlements, on May 16, 2003, Plaintiffs, in the earlier federal lawsuit, filed a Motion for Partial Summary Judgment on Validity of Assignment and Applicable Settlement Credit.  Def. App. Ex. 13.  In the motion, Plaintiffs argued that Allstate's assignment to Toyota of its subrogation claims following their settlement should either be void as against public policy in Texas, or should be limited to the $900,000 Toyota paid, rather than Allstate's full $1.3 million subrogation interest.  *Id.* at 3-8.  At no time did Plaintiffs suggest that Allstate had violated the made-whole doctrine by settling before they did.  Before the court in the prior federal case ruled on Plaintiffs' motion, they settled with Toyota and dismissed their action.  Thus, Plaintiffs had the opportunity to object to Allstate and Toyota's settlement, but either failed or chose not to do so, and also failed to assert their current claim in a timely manner.

Plaintiffs argue that they did not waive their made-whole claim, because they had no standing to bring the claim until their settlement with Toyota failed to make them whole.  As the court noted, Allstate and Plaintiffs settled with Toyota on December 30, 2002, and July 31, 2003,

**Memorandum Opinion and Order – Page 17**

respectively, but the court did not enter orders to dismiss and nonsuit until August 11, 2003, and September 30, 2003, respectively. If Plaintiffs believed that Toyota paid them too little for their uninsured losses, or that Allstate received payment, in violation of the made-whole doctrine, for uninsured losses that should have been paid first to them, they could have and should have raised those matters between December 30, 2002 and September 30, 2003. Plaintiffs' failure to timely assert their claim constitutes a forfeiture of that claim.

## IV.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The court has determined that Defendant's Motion for Summary Judgment should be granted. In Plaintiffs' Motion for Summary Judgment, they contend that the made-whole doctrine applies and that *res judicata* and waiver do not apply. As the court has already ruled on these matters in deciding Defendant's Motion for Summary Judgment, a favorable ruling on Plaintiff's Motion for Summary Judgment would be totally inconsistent with the legal determinations the court made regarding Defendant's Motion. Accordingly, summary judgment would not be appropriate in favor of Plaintiffs.

## V.  CONCLUSION

For the reasons stated herein, the court determines that no genuine issue of material fact exists regarding any claim asserted by Plaintiffs, and Allstate is entitled to summary judgment as a matter of law. Accordingly, the court  **grants** Defendant's Motion for Summary Judgment; and **denies** Plaintiffs' Motion for Summary Judgment. Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**Memorandum Opinion and Order – Page 18**

**It is so ordered** this 3rd day of January, 2007.

Sam A. Lindsay
United States District Judge